J-A29010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY RAHEEM GIDDINGS | : | |
| | : | |
| Appellant | : | No. 3493 EDA 2016 |

Appeal from the Judgment of Sentence January 21, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0015079-2012

BEFORE:   LAZARUS, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:          **FILED JANUARY 03, 2018**

Gregory Raheem Giddings appeals from the judgment of sentence, imposed in the Court of Common Pleas of Philadelphia County, following his convictions for second-degree murder, burglary, robbery, conspiracy to commit burglary and robbery, and two counts of Violation of the Uniform Firearms Act ("VUFA").[1]  After careful review, we affirm.

On September 19, 2014, a jury found Giddings guilty of the foregoing charges following a trial presided over by the Honorable Rose Marie Defino-Nastasi.  On January 21, 2015, the trial court sentenced Giddings to life imprisonment for the second-degree murder conviction; he received no

_____

[1] 18 Pa.C.S.A. § 2502, 18 Pa.C.S.A. § 3502, 18 Pa.C.S.A. § 3701, 18 Pa.C.S.A. § 903, 18 Pa.C.S.A. § 6106, and 18 Pa.C.S.A. § 6108, respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

further penalty for the remaining convictions.[2] On September 3, 2015, Giddings filed a timely first *pro se* petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546, in which he claimed that counsel was ineffective for failing to file a notice of appeal. The PCRA court appointed David Rudenstein, Esquire, as Giddings' counsel, and on May 22, 2016, Giddings filed an amended petition asserting that trial counsel provided ineffective assistance when he failed to file his requested appeal.[3] On October 13, 2016, Giddings' PCRA petition was granted, and his appellate rights were reinstated *nunc pro tunc*. Both Giddings and the trial court have complied with Pa.R.A.P. 1925. On appeal, Giddings raises the following issues:

1. The evidence was insufficient to sustain the verdict of guilty as the Commonwealth failed to prove beyond a reasonable doubt that Giddings engaged in a burglary or robbery and the death of the victim did not occur during the course of a felony.

---

[2] On February 20, 2015, thirty days after Giddings' sentencing hearing, trial counsel W. Fred Harrison, Jr., Esquire, filed an untimely post-sentence motion requesting a new trial. In his motion, Giddings alleged that (1) the verdict was against the weight of the evidence, and (2) the evidence was insufficient to support the verdict. Attorney Harrison titled the motion "POST TRIAL MOTIONS NUNC PRO TUNC," however, there is no indication in the record that the trial court granted Giddings leave to file a post-sentence motion *nunc pro tunc*. Accordingly, the motion was not entered in the certified docket. **See** Pa.R.Crim.P. 720(A)(1) ("[A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence.")

[3] Giddings' amended PCRA petition only sought the following relief: (1) an evidentiary hearing to determine whether Giddings actually requested trial counsel file an appeal, and (2) restoration of appellate rights *nunc pro tunc*. Giddings' amended petition did not seek restoration of his rights to file a post-sentence motion. The Commonwealth did not oppose Giddings' amended PCRA petition.

- 2 -

2. The verdict was against the weight of the evidence as the evidence only supports that Giddings was present at the scene but not that he was committing a felony.

Brief of Appellant, at 6 (reworded for clarity).

Our standard of review in reviewing sufficiency claims is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), quoting

*Commonwealth v. Estepp*, 17 A.3d 939, 943-44 (Pa. Super. 2011).

Here, the evidence presented at trial supported a finding that Giddings set the warehouse robbery in motion, after which he fired two shots at the fleeing victim; thus, he is responsible for the resultant death. *See* Trial Court Opinion, 3/22/16, at 8-13.

Upon review of the parties' briefs, the record, the relevant law and Judge Defino-Nastasi's decision, we find that the trial court's well-reasoned decision

comprehensively and correctly disposes of Giddings' sufficiency issue on appeal. Accordingly, we affirm in part based on Judge Defino-Nastasi's decision. We direct counsel to attach a copy of that opinion in the event of further proceedings in this matter.

Giddings next claims that his conviction is against the weight of the evidence; however, Giddings has waived this claim on appeal. To preserve a challenge to the weight of the evidence, a defendant must raise the claim before the trial court in a motion for a new trial: (1) orally, before sentencing; (2) by written motion, before sentencing; or (3) in a post-sentence motion. Pa.R.Crim.P. 607. An appellate claim raising the weight of the evidence is therefore a challenge to the trial court's exercise of discretion in ruling on the claim in the first instance, and must be preserved below. **Commonwealth v. West**, 937 A.2d 516, 521 (Pa. Super. 2007).

Instantly, Giddings did not raise a weight claim at any time during trial or by filing a post-sentence motion pursuant to Pa.R.Crim.P. 720(a). Additionally, Giddings did not seek reinstatement of his post-sentence motion rights in either his *pro se* PCRA petition or his counseled petition.[4] Therefore,

---

[4] In any event, Giddings' belated weight claim is meritless. This court's "standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. Mucci**, 143 A.3d 399, 410-11 (Pa. Super. 2016), quoting **Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013). "In order for an appellant to prevail on a challenge to the weight of the

Giddings has waived his weight claim. **See Commonwealth v. Washington**,

825 A.2d 1264, 1265-66 (Pa. Super. 2003).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2018

_____

evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" **Id.** at 411, quoting **Commonwealth v. Sullivan**, 820 A.2d 795, 806 (Pa. Super. 2003).

Here, the jury believed the Commonwealth's evidence proved beyond a reasonable doubt that Giddings shot and killed the victim during the commission of an armed robbery. Trial Court Opinion, 11/22/16, at 13-14. It is within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge defendant guilty. **Commonwealth v. Charlton**, 902 A.2d 554, 562 (Pa. Super. 2006). We discern no abuse of discretion by the trial court in finding that the verdict was not so contrary to the evidence as to shock one's sense of justice.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0015079-2012

v. : 3493 EDA 2016

GREGORY R. GIDDINGS :
(aka Gregory Raheem Giddings)

:

**OPINION**

Rose Marie DeFino-Nastasi, J.

FILED

MAR 2 2 2016

Criminal Appeals Unit
First Judicial District of PA

**PROCEDURAL HISTORY**

On September 19, 2014, the Defendant was found guilty after a jury trial, presided over

by the Honorable Rose Marie DeFino-Nastasi, of Second Degree Murder, 18 Pa.C.S. § 2502, as

a felony of the first degree; Burglary, 18 Pa.C.S. § 3502, as a felony of the first degree; Robbery,

18 Pa.C.S. § 3701, as a felony of the first degree; Conspiracy to Commit Burglary and Robbery,

18 Pa.C.S. § 903, each a felony of the first degree; Violation of the Uniform Firearms Act

(VUFA), 18 Pa.C.S. § 6106, as a felony of the third degree; and VUFA, 18 Pa.C.S. § 6108, as a

misdemeanor of the first degree. N.T. 01/19/15 at pp. 145-148.

On January 21, 2015, the Defendant was sentenced to life imprisonment for the second

degree murder conviction; and no further penalty for the remaining convictions.

On September 3, 2015, the Defendant filed a timely *pro se* Post-Conviction Relief Act

(PCRA) petition, claiming that counsel was ineffective for failing to file a notice of appeal.

David Rudenstein, Esq. was appointed PCRA counsel and filed an amended petition requesting

Defendant's appellate rights to be reinstated *nunc pro tunc*. On October 13, 2016, Defendant's

PCRA petition was granted. This timely appeal followed.

CP-51-CR-0015079-2012 Comm. v. Giddings, Gregory Raheem
Opinion



7923100001

1

On November 29, 2016, Defendant filed a Rule 1925(b) Statement of Matters Complained of on Appeal, pursuant to an order of the court, claiming that:

1. The evidence was insufficient to sustain the verdict of guilt as the Commonwealth failed to prove beyond a reasonable doubt that the Defendant engaged in any burglary or robbery; and the death of the victim in this matter did not occur during the course of a felony.

2. The verdict was against the weight of the evidence because the greater weight of the evidence would only support the Defendant's presence at the scene and not in the course of a felony.

## FACTS

On March 28, 2012, Defendant Gregory Raheem Giddings shot and killed decedent, Clinton Brunson, inside the Budd plant at 2401 West Hunting Park Avenue in Philadelphia.

Dean Cafiero testified that he owns the Budd plant, an old warehouse filled with equipment and copper wires. N.T. 09/16/14 at pp. 45-47. He has had problems with persons coming onto his property to "scrap" metal, and he keeps the doors to the building locked to prevent intruders. *Id.* at pp. 49-50. Police alerted him of a break-in at his property on March 28, 2012. *Id.* at pp. 52-53. A garage door which was locked and in working condition was broken at the time of the instant offense. *Id.* at p. 51. Copper pipe was stolen, which officers subsequently returned. *Id.* at p. 53. Cafiero testified that neither this Defendant nor any of his cohorts had permission to be inside the Budd plant in 2012, nor did they have permission to remove any items from the plant. *Id.* at pp. 55-56.

Detective Edward Davis testified that he was assigned to investigate a shooting at the Budd plant. N.T. 09/16/14 at p. 67. He met with eyewitness Kashief Bailey, the friend of the

2

decedent. Bailey told the Detective that he believed his friend may have been shot inside the Budd plant and that he did not know his friend's whereabouts. *Id.* at pp. 71-72. Bailey directed Detective Davis and Detective Boos to his vehicle parked on 18th Street and Erie Avenue, approximately five to six blocks from the plant. *Id.* There were two bullet holes on the passenger's side and one in the windshield of the vehicle. Inside the vehicle was copper pipe. *Id.* at pp. 71-72.

Detective Davis and his partner then went into the Budd plant. There were no lights in the plant. It was an open space, approximately three football fields long, which had a lot of manhole covers. *Id.* at p. 72. Detective Davis recovered a .9 millimeter fired cartridge casing (FCC) on top of the loading ramp. He observed a flashlight on the ground. *Id.* at pp. 72-73.

Detective Davis and his partner left the plant at approximately 6:15 or 6:20 a.m. As they were traveling eastbound on Hunting Park Avenue from the Budd plant, Detective Davis observed a black male, later identified as the decedent, slumped over on the porch at 2330 West Venango Street. This address is approximately 100 yards away from the gate of the Budd plant. *Id.* at pp. 115-116. The decedent was unresponsive. He was pronounced dead at 6:25 a.m. *Id.* at pp. 73.

David Walker,[1] the Defendant's brother, testified that he, the Defendant and several other people would regularly visit the Budd plant to remove or "scrap" metals to sell, such as copper, cast iron, and aluminum. N.T. 09/17/2014 at pp. 45-46. On the evening of March 27, 2012, the Defendant called Walker and told him that there were males scrapping in a manhole at the plant that the Defendant and others had already worked on and that those males did not intend to split

---

[1] David Walker entered into an open plea to third degree murder, burglary and conspiracy under docket number CP-51-CR-0015078-2012.

the copper with the Defendant, Walker, and their friend, Tracy Brittingham[2]. *Id.* The Defendant told Walker that he and Brittingham had previously made a deal with one of the men that the Defendant would let them borrow his concrete saw and, in return, they would split the copper they retrieved. *Id.* at pp. 58-59.

The Defendant picked up Walker in his truck and drove him to the Budd plant. *Id.* at p. 55. The two men brought tools to scrap including a concrete saw, a ten-foot chain in a bucket, tool bags, and ratchet sets. *Id.* at p. 56. Brittingham was already inside the Budd plant when they arrived. *Id.* at p. 57. He opened one of the doors on Hunting Park Avenue to let the Defendant and Walker into the plant. *Id.* at pp. 57-58, 62.

Walker testified that upon entering the factory, he saw the Defendant hand over the concrete saw to one of the men. N.T. 09/17/2014 at pp. 59. Walker and the Defendant then went to the lower level of the factory, into the electrical room to work on a transformer, and Brittingham and the other man went to the main level of the factory. *Id.* at pp. 59-60. Walker testified that after some time, Brittingham ran downstairs to alert him that the men were leaving the factory with the copper. N.T. 09/17/2014 at p. 66. Walker, the Defendant and Brittingham immediately ran upstairs. *Id.* at p. 66.

Walker testified that he knew that the Defendant owned a gun and that he kept it in his "work bag" that he would always bring to the plant. *Id.* at p. 56. The bag was one that you carry around your shoulder and which, he believed, the Defendant had around him. *Id.* at p. 69.

The Defendant said that he would go around the front and Walker and Brittingham should go around the back. *Id.* at pp. 66-67. Walker testified that he saw the vehicle of the other men who were scrapping at the plant drive down a ramp while four or five people were guiding

---

[2] Tracy Brittingham entered into an open plea to burglary under docket number CP-51-CR-0015080-2012.

the driver out with flashlights. *Id.* at p. 67. Walker then heard tires screeching and two or three gun shots. *Id.* at p. 68. Walker left the factory through the office and saw that the garage door was busted. *Id.* at p. 68.

Brittingham testified that he called the Defendant on March 27, 2012, and told him that two men, whom he believed were from New Jersey, were cutting copper from a manhole in the back of the factory that the Defendant had previously worked on. N.T. 09/17/2014 at pp. 160-161. Brittingham proposed to the Defendant that when the men put the first load of copper in their vehicle and drive away, that the Defendant take the remaining copper and leave. *Id.* at pp. 159-161. The Defendant and Walker arrived at the factory about one hour after the phone call. *Id.* at p. 163. Brittingham testified that it looked like the Defendant had a gun around his waist when he entered the factory. *Id.* at p. 162. Brittingham, the Defendant, and Walker had a brief conversation in which Brittingham, again, suggested to let the men load up the first batch of copper and then they would take the rest. **The Defendant said, "[N]o, fuck that, we will take the whole thing."** *Id.* at pp. 171-172.

Brittingham testified that he saw the vehicle, which the men loaded with copper, coming down the ramp towards the exit of the plant. *Id.* at pp. 161-162. He did not want to be seen and, hence, stayed away from the ramp. *Id.* He heard the Defendant say "drop it" or "stop." Then Brittingham heard about three gunshots and the vehicle crash through the garage door. *Id.* at pp. 162-163. He then looked through two glass doors in the office of the factory and saw the vehicle drive out onto the street. *Id.*

Bailey testified that he and the decedent were at the factory from about 1:00 p.m. on March 27, 2012, until 1:00 or 2:00 a.m. the next morning. N.T. 09/18/2014 at p. 76. They were also in the building without permission scrapping metal. *Id.* at p. 77. They needed to cut a copper

5

pipe into smaller pieces and someone at the factory, whom he identified as Dee, had a power tool and helped to cut the pipe for them. *Id.* at pp. 77-78. An old man, over fifty years old, and a young boy, approximately nineteen years old, were at the factory with Dee. *Id.* at pp. 109-110. Bailey further testified that there was no agreement with Dee regarding splitting the copper pipe. *Id.* at p. 77. However, Bailey did have an exchange of words with the older man who was telling Bailey that they would have to give him a portion of what they retrieved. *Id.* at p. 111

Bailey testified that when he and the decedent were loading up their vehicle, a man came to them and said they were supposed to leave his friend some of the copper. Bailey said, "No." N.T. 09/18/2014 at pp. 81-82. That person then phoned someone and told him to hurry up because, "They were loading up." *Id.* at p. 82. When he and the decedent finished loading the vehicle, the decedent insisted that Bailey keep the headlights of his vehicle off to drive it down the ramp and that the decedent would guide him down with a flashlight. *Id.* When the car approached the garage door, a male jumped over a railing, pointed a gun at the decedent, and demanded for him to drop the phone and flashlight. *Id.* The decedent dropped the flashlight, but held onto his phone. *Id.* at p. 123. The decedent was standing on the driver's side of the vehicle and the man was standing on the passenger's side. *Id.* at p. 83.

Bailey testified that he was going to try to run the male over but instead cut the wheel back straight, crashed through the garage door, and left. N.T. 09/18/2014 at p. 84. Bailey heard five shots as he was driving through the garage door and away from the factory. The decedent called him after he drove away and told Bailey that he thought that he was shot. *Id.* at p. 84. Bailey asked where he was but the decedent did not respond. *Id.*

Detective George Fetters testified that the Defendant gave a statement in this matter. The Defendant indicated that Brittingham called him at approximately 10:00 or 11:00 p.m. on March

27, 2012, and told him that he had made a deal with some men at the Budd plant. N.T. 09/18/2014 at p. 165. Brittingham stated that the deal was that the Defendant and he lend tools to the men so they could extract copper piping and, in return, the men would split the piping with Brittingham and the Defendant. *Id.* at pp. 165-166. In accordance with the arrangement, the Defendant lent the men come-along chains, a concrete saw, wheel dollies, and crowbars. *Id.* at p. 166. The Defendant stated that the men he was dealing with at the factory were two men from New Jersey and a man named Dee, who was Brittingham's friend. N.T. 09/18/2014 at pp. 168.

After approximately one hour at the factory the Defendant heard an argument between Brittingham and the men who were cutting the copper. N.T. 09/18/2014 at p. 167. Brittingham was telling the men that the copper they were cutting actually belonged to him. *Id.* at p. 167. Brittingham then ran downstairs and yelled "yo, yo, yo. They stealing the shit." *Id.* at p. 170.

In his statement, the Defendant stated that he grabbed his tool bag where he kept a .9 millimeter gun for protection and ran upstairs. *Id.* He went outside to the ramp where the men loaded their vehicle with the copper. The driver gunned the engine and the vehicle drove toward him. *Id.* at p. 171. He jumped back and fired the gun at the passenger's side of the vehicle. *Id.* He was shooting at the front tire, but the vehicle just kept going down the ramp and busted the garage door. *Id.* at pp. 171-172. The Defendant ran back down the steps and out the door onto Hunting Park Avenue. *Id.* at p. 172. He went to his white work van and drove to the location where his relatives live on Clearfield Street. *Id.* at p. 173. He threw the gun into a truck which was parked on Clearfield Street. *Id.* at pp. 173-174. The gun was not recovered.

Officer John Taggart of the Crime Scene Unit testified that there was no electricity and, hence, there were no lights inside the Budd plant. The only light that came in was from the skylights and the windows of the property. N.T. 09/16/14 at p. 131. He recovered a fired

cartridge casing under the stairs of the ramp at the plant, as well as a projectile on the ramp. *Id.* at pp. 140, 147. At the top of the ramp, he found a black flashlight. *Id.* at p. 141. Officer Taggart testified that inside the plant he found manhole covers with pieces of copper piping encased in lead. *Id.* at p. 142. He also found cans and bottles, hooks, an antifreeze container with gasoline in it, a saw blade, work gloves, and a 14 inch general purpose metal cutting blade. *Id.* at p. 142-145, 148-149. On the sidewalk in front of the plant, he found a Maryland license plate, nine pieces of various car parts, and a small blue pocketknife. *Id.* at pp. 148-150.

Dr. Gary Lincoln Collins, Deputy Chief Medical Examiner, testified that he was the medical examiner assigned in the instant case. N.T. 09/17/14 at pp. 133-134. He testified that the decedent had a single penetrating gunshot wound located on his back, to the left of the midline. Dr. Collins recovered a bullet from the right arm of the decedent. *Id.* at pp. 135-136. Dr. Collins testified that due to the decedent's wound it was possible for him to walk or run 100 yards or more before he died of internal bleeding and that there was no blood trail in the present case because the blood accumulated in the chest cavity first. *Id.* at pp. 141-142.

## ANALYSIS

### Issue I

Defendant argues that there was insufficient evidence to sustain the verdict of guilt for the charges of murder, robbery and conspiracy to commit robbery because the Commonwealth failed to prove beyond a reasonable doubt that the Defendant was a principal, accomplice, or conspirator.

The standard of review for a challenge to sufficiency is well-settled.

8

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a Defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review. *Com. v. Slocum*, 86 A.3d 272, 275-76 (Pa. Super. 2014) (citing *Com. v.*

9

*Bostick*, 958 A.2d 543, 560 (Pa. Super. 2008), app. denied, 987 A.2d 158 (Pa. 2009) (quoting Com. v. Smith, 956 A.2d 1029, 1035-36 (Pa. Super. 2008) (en banc).

"To secure a conviction for second-degree murder, the Commonwealth must prove that the defendant committed a murder while [he] was engaged . . . in the perpetration of a felony." 18 Pa.C.S. § 2502(b) (internal quotation marks omitted). "'Perpetration of a felony' is statutorily defined in a very broad manner, encompassing, inter alia, '[t]he act of the defendant in engaging in ... the commission of, or an attempt to commit, ... robbery ...'" *Commonwealth v. Miller*, 35 A.3d 1206, 1212 (Pa. 2012) (quoting 18 Pa.C.S. § 2502(d).

A person commits robbery if, "in the course of committing a theft, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; (iii) [or] commits or threatens immediately to commit any felony of the first or second degree." 18 Pa.C.S. § 3701(a)(1)(i)-(iii). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit a theft or in flight after the attempt or commission." *Id.* at § 3701(a)(2). A theft means taking unlawful control of or exercising unlawful control over the movable property of another with intent to deprive him thereof. *See* 18 Pa.C.S. § 3921. It is not necessary that a defendant have successfully completed a theft in order to commit robbery. *See Com. v. Robinson*, 936 A.2d 107, 110 (Pa. Super. 2007).

The elements of the offense of burglary are defined as the entry of a building or occupied structure thereof, with the intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. 18 Pa.C.S. 3502. The specific intent required to make out a burglary charge may be found in defendant's words, conduct, or from the attendant circumstances together with all reasonable inferences therefrom.

10

*Commonwealth v. Atkins*, 232 Pa.Super. 206, 335 A.2d 375 (1975); *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963).

A defendant also may be guilty of robbery or burglary as an accomplice or co-conspirator as long as the defendant possessed the requisite *mens rea* to commit the criminal act and the additional elements of accomplice liability or conspiratorial liability are established. *Com. v. Mitchell*, 135 A.3d 1097, 1102 (Pa. Super.), app. denied, 145 A.3d 725 (Pa. 2016). Conspiracy is defined as follows:

> (a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such a crime.

18 Pa.C.S. § 903(a). Where a conspiracy has multiple criminal objectives, a person is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship. 18 Pa.C.S. § 903(c). Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy. *Com. v. McCall*, 911 A.2d 992, 996-97 (Pa. Super. 2006) (citation omitted).

11

It is clear that sufficient evidence was presented at trial to support the Defendant's conviction for burglary of the Budd plant. The Defendant and his co-conspirators broke into the building and retrieved copper piping from throughout the premises. The evidence established that no permission was given to any of the co-conspirators to enter the premises or to remove any items. The manholes in the factory were taken apart in order to remove the copper piping, after which the pipes were taken elsewhere to be sold.

The evidence at trial showed that, initially, the Defendant and his co-conspirators broke into the Budd plant to steal copper. However, that plan was revised once the Defendant and his co-conspirators determined that the decedent and Kashief Bailey were not going to give them their cut of the proceeds. At that point, the Defendant decided that he would wait until the decedent and Bailey cut the copper and then take it from them by force with a gun. According to Brittingham, when Brittingham suggested they wait and take what was left behind the Defendant said, "[N]o, fuck that, we will take the whole thing."

The Defendant's own statement placed himself on the ramp shooting the gun. Bailey testified that he saw the Defendant jump in front of his vehicle and point a black handgun at the decedent and start shooting. Brittingham heard the Defendant yell "drop it" or "stop" before the gunshots. Once the Defendant engaged in this action he became the principal actor in the robbery and therefore the second degree murder.

The Defendant claims that he fired *only* after Bailey attempted to hit him with the vehicle and *only* at the tires. This is a distinction without a difference under the doctrine of felony murder. There is no requirement of specific intent. The malice for second degree murder is the commission of the underlying robbery. Furthermore, the gunshot wound to the decedent's back

12

and the damage to the car belie this assertion. There were two bullet holes on the passenger's side and one to the windshield. Since the Defendant set the robbery in motion, he is liable for the death regardless. The evidence viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to sustain the jury's verdict of guilt.

## Issue II

Defendant argues that the verdict was against the weight of the evidence because the Commonwealth failed to prove beyond a reasonable doubt the charges of murder in the second degree, robbery, burglary and conspiracy to commit robbery and burglary.

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. *Com. v. Devine*, 26 A.3d 1139, 1147 (Pa. Super. 2011), app. denied, 42 A.3d 1059 (Pa. 2012) (citations omitted). "[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Com. v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014). Accordingly, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Com. v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). A trial judge should not grant a new trial due to "a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Clay*, 64 A.3d at 1055. Instead, the trial court must examine whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* at 1055. Only where the jury verdict "is so contrary to the evidence as to shock one's sense of justice" should a trial court afford a Defendant a new trial. *Id.*

13

The weight of the evidence is exclusively for the finder of fact. The jury's verdict in this case signifies that it believed the overwhelming direct and circumstantial evidence which proved beyond a reasonable doubt that the Defendant shot and killed the decedent while he was engaged in the commission of an armed robbery. The mere conflict in the testimony as to whether the Defendant aimed to shoot at the tires of the vehicle to avoid being hit or at the decedent is irrelevant to that determination. It is evident that the jury verdict is not so contrary to the evidence as to shock one's sense of justice, and therefore, the verdict was not against the weight of the evidence.

## CONCLUSION

Based on the foregoing, the judgment of sentence of the trial court should be affirmed.

By the Court:

_Rose Marie DeFino-Nastasi_

Rose Marie DeFino-Nastasi, J.

14

**Commonwealth v. Gregory R. Giddings**
**CP-51-CR-0015079-2012**
**Opinion**

### Proof of Service

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defendant:
        Gregory R. Giddings, LW 1024
        SCI Rockview
        1 Rockview Place
        Box A
        Bellefonte, PA  16823

Type of Service: ( ) Personal (x) First Class Mail ( ) Other, Please Specify:

Counsel:
        David Rudenstein, Esq.
        9411 Evans Street
        Philadelphia, PA 19115

Type of Service: ( ) Personal (x) First Class Mail ( ) Other, Please Specify:

District Attorney:
        Philadelphia District Attorney's Office
        Widener Bldg.
        3 South Penn Square
        Philadelphia, PA  19107

Type of Service: ( ) Personal ( ) First Class Mail (x) Inter-Office

Date: 03/22/17

Michael G. Zaleski, Esq.
Law Clerk to the Honorable Rose Marie DeFino-Nastasi